CRAIG H. MISSAKIAN (CABN 125202)
United States Attorney

MARTHA BOERSCH (CABN 126569)
Chief, Criminal Division

ROLAND CHANG (CABN 271511)
Assistant United States Attorney

   450 Golden Gate Avenue, Box 36055
   San Francisco, California 94102-3495
   Telephone: (415) 436-7108
   Fax: (415) 436-7027
   Roland.Chang@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) **CASE NO. CR 23-00017-JD** |
| Plaintiff, | ) **UNITED STATES' SENTENCING MEMORANDUM**[1] |
| v. | ) |
| LUCAS MICHAEL NOVICK, | ) Hearing Date: August 11, 2025<br>) Time:          10:30 a.m.<br>) Courtroom:   No. 11, 19th Floor |
| Defendant. | ) Judge:         Hon. James Donato |

## I.    INTRODUCTION

On August 15, 2022, the defendant Lucas Michael Novick ("Novick") went to the Tenderloin District in San Francisco, California and purchased several federally controlled substances, including fentanyl, methamphetamine, cocaine, and heroin, with the intent to distribute them to other individuals at a party in San Rafael, California that he was attending.  Novick then returned to the party and distributed the illegal drugs that he purchased, including a substance containing a detectable amount of fentanyl.  At the party, two people overdosed after taking drugs provided by Novick.  The next day, on August 16, 2022, Novick was present at his then-residence and called 911 regarding the overdose deaths

---

[1] This sentencing memorandum is identical to the memorandum erroneously filed at Dkt. 76, but removes information related to victims and witnesses to protect their privacy rights.

of two individuals at the residence, including his then-housemate and another individual who had attended the party in San Rafael the night prior.  When law enforcement arrived, they searched Novick and seized 3.4 grams gross of fentanyl, $513 cash, and a pipe containing methamphetamine.

For his conduct, on January 18, 2023, a federal grand jury in the Northern District of California issued a one-count Indictment charging Novick with Possession With Intent to Distribute and Distribution of Fentanyl, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C).  On March 3, 2025, Novick pled guilty to Count One in the Indictment pursuant to a plea agreement.

For the reasons below, the government respectfully recommends that the Court sentence Novick to: (i) a term of imprisonment of 27 months, to be served consecutively to the four-year state prison term imposed by the Superior Court of California, County of Marin in the criminal case filed by the Marin County District Attorney's Office in DA Case No. 349969; (ii) three years of supervised release, to include a suspicionless search condition; and (iii) a special assessment of $100.

## II.   PROCEDURAL HISTORY

On January 18, 2023, a federal grand jury issued a one-count indictment against Mr. Novick charging him with possession with intent to distribute and distribution of fentanyl, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C).  Dkt. 1.  On March 3, 2025, Mr. Novick pled guilty to the sole count in the indictment, through a plea agreement pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure.  Dkt. 67.  Pursuant to the plea agreement, the parties agreed to recommend a sentence of 27 months of imprisonment (*i.e.*, a mid-Guidelines sentence), to be served consecutively to the four-year state prison sentence imposed by the Superior Court of California, County of Marin in the criminal case filed by the Marin County District Attorney's Office in DA Case No. 349969.  *See id.* ¶ 8.

Sentencing is scheduled for August 11, 2025 before this Court.  Dkt. 74.

## III.   OFFENSE CONDUCT AND SENTENCING GUIDELINES CALCULATION

### A.   Novick Distributed Fentanyl on August 15, 2022 and Was Present for Overdose Deaths on August 16, 2022

On August 14, 2022, "Novick was invited to the Embassy Suites hotel" in San Rafael, California for a party.  Presentence Investigation Report, Dkt. 75 ("PSR") ¶ 10.  "Novick initially arrived at the party, but he did not have drugs at the time." *Id.*  Several individuals were attendees at the party. *Id.*

"Later that evening [*i.e.*, the morning of August 15], an individual at the party ordered an Uber ride for [] Novick and Victim 1 so they could travel to the Tenderloin District of San Francisco to purchase drugs for the party." *Id.* Shortly thereafter, "Novick went to the Tenderloin District in San Francisco, along with Victim 1, to purchase fentanyl, methamphetamine, cocaine, and heroin with the intent to distribute them to other individuals and for personal use." PSR ¶ 6. "After purchasing the controlled substances, [] Novick and Victim 1 returned to" the party at the Embassy Suites hotel. *See* PSR ¶ 10. "At the hotel party, [] Novick distributed some of the previously purchased controlled substances, including a substance containing a detectable amount of fentanyl to several individuals at the party." *Id.* Specifically, he "had multiple bags of controlled substances that he separated into smaller bags." *Id.* "Novick then distributed some of the substances to individuals at the party, several of whom ingested the drugs." *Id.* "After consuming the drugs provided by Mr. Novick, an overdose reversal medication was administered to Victim 2." *Id.* "Once Victim 2 woke up, he noticed Victim 3 was not responsive, but her eyes were open." *Id.* An individual "also administered Narcan to Victim 3 and poured water on her face." *Id.* "Victim 3 woke up but had difficulty breathing." *Id.* "Victim 1 called 911 and Victim 3 was transported to receive emergency services." *Id.* In short, "[a]t the party, two people overdosed after ingesting drugs distributed by Novick. PSR ¶ 9.

The next day, on August 16, 2022, "at approximately 1:46 p.m., [] Novick called 911 to report that two males possibly overdosed." PSR ¶ 7. "Novick reported that the males were at his residence, located at 1355 Cambridge Street in Novato, California." *Id.* "During the 911 call, [] Novick stated that shortly after ingesting a substance, both men fell asleep but were still moving." *Id.* "Novick stated he left the residence for the evening and when he returned the next day, both men were still unconscious." Officers responded to the residence and "located Victim 4 (age 68) and Victim 1 (age 28)." PSR ¶ 8. "Both were dead with signs of rigor mortis." *Id.* "Victim 4 was located at the kitchen table and Victim 1 was seated on the couch." *Id.* "Officers located methamphetamine on the table next to Victim 4." *Id.* "Inside Victim 1's pocket, officers located a plastic bag containing methamphetamine and fentanyl." *Id.* "Novick informed officers that he had recently moved into the residence, where Victim 4 already resided, and records revealed he was on probation." *Id.* "A [law enforcement] search of [Novick's]

person revealed a plastic bag containing 3.4 gross grams of fentanyl, $513 cash and a pipe containing methamphetamine." *Id.*

In total, Novick is "accountable for less than four grams of fentanyl" related to the charged conduct. PSR ¶ 11.

**B.      The PSR Accurately Calculated the Offense Level and Criminal History Category**

The government agrees with Probation's offense-level calculation in the PSR (see below), which is identical to the parties' agreed-upon offense level calculation in the plea agreement:

a.      Base Offense Level, U.S.S.G. § 2D1.1(c)(14) – less than 4 G of
Fentanyl (N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] Propanamide):        12

b.      Acceptance of Responsibility, U.S.S.G. § 3E1.1        - 2

c.      Adjusted Offense Level:        10

PSR ¶¶ 16-24. The government further agrees that Novick's criminal history category is VI. PSR ¶¶ 34-36. Total Offense Level 12 at CHC VI yields a Guidelines range of 24 to 30 months.

## IV.    SENTENCING RECOMMENDATION

### A.      Legal Standard

The United States Sentencing Guidelines serve as "the starting point and the initial benchmark" of any sentencing process and are to be kept in mind throughout the process. *See United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008); *see also United States v. Kimbrough*, 522 U.S. 85, 108 (2007). The overarching goal of sentencing, as set forth by Congress, is for the Court to "impose a sentence sufficient, but not greater than necessary." *Carty*, 520 F.3d at 991 (citation omitted). In accomplishing that goal, the Court should consider the factors set forth under 18 U.S.C. § 3553(a), which include:

(1)      the nature and circumstances of the offense and the history and
characteristics of the defendant;

(2)      the need for the sentence imposed to reflect the seriousness of the
offense, to promote respect for the law, and to provide just
punishment for the offense;

(3)      the need for the sentence imposed to afford adequate deterrence to
criminal conduct;

(4)      the need for the sentence imposed to protect the public from
further crimes of the defendant; and

(5)     the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.

**B.     Probation's Recommendation**

Probation has recommended that the Court sentence Novick to a term of imprisonment of 27 months, to be served consecutively to the four-year state prison term imposed for his June 11, 2025 state conviction, supervised release of three (3) years, and a special assessment of $100.

**C.     Government's Recommended Term of Imprisonment**

**1.     Novick's History and Characteristics**

The defendant Lucas Michael Novick is a 28-year-old man with seven criminal convictions of increasing seriousness, as well as substance abuse issues, dating back to 2015, *i.e.*, shortly after he turned 18 years old.

On March 11, 2015, Novick was convicted for Driving Under the Influence of Alcohol (misdemeanor), in violation of California Vehicle Code § 23152(b), for which he received 36 months of probation and a fine.  PSR ¶ 27.

On January 23, 2020, Novick was convicted for Second Degree Burglary (misdemeanor), in violation of California Penal Code § 459, for which he received a sentence of 270 days in jail and 3 years' probation.  PSR ¶ 28.

On June 15, 2021, Novick was present for the overdose death of his then-girlfriend.  PSR ¶ 48. The Santa Cruz Police Department was dispatched to a motel located in Santa Cruz, California.  *Id.* Upon arrival, Novick opened the motel room door and his girlfriend was lying supine on the bed, with her airway obstructed by vomit.  *Id.*  On June 17, 2021, Novick's girlfriend "was pronounced dead after being removed from life support."  *Id.*  Prior to her death, "[she] had been declared possibly brain dead." *Id.*  "The coroner determined that the cause of death was an accidental overdose, specifically caused by anoxic encephalopathy due to cardiac arrest caused by acute heroin and methamphetamine intoxication." *Id.*

On August 4, 2022, Novick was convicted for Vandalism (felony), in violation of California Penal Code § 594(b)(1), for which he received an imposition of state sentence suspended and 24 months' probation.  PSR ¶ 30.  He served 52 days in state jail for this conviction.  *Id.*  On the same date,

Novick was also convicted for Tampering with a Vehicle (misdemeanor), for which he received a sentence of 60 days in jail and 12 months' probation. PSR ¶ 31. According to police reports, Novick taunted the driver of a car by knocking on the car's window and trying to open the door for an unknown reason. *Id.* Novick then began stuffing the tailpipe of the car with paper towels, at which point the driver got out of the car and approached Novick, who had a vase in his hand. *Id.* Novick attempted to hit the driver with the vase, who dodged it and punched Novick in the face. *Id.*

On September 15, 2022, Novick was convicted for Carrying a Concealed Firearm (felony), in violation of California Penal Code § 25400, for which he received a sentence of 240 days in jail and 12 months' probation. PSR ¶ 32. Novato Police Department officers saw Novick pacing back and forth and speaking to a person who was not there. *Id.* Officers asked Novick if he was okay; Novick stated that he recently lost two friends and that he was on probation. *Id.* Due to Novick's probation terms, the officers searched Novick's person, backpack, and bicycle and seized, among other things, a clear bottle with methamphetamine and a loaded Magnum revolver. *Id.*

On April 25, 2024, Novick was convicted for Second Degree Burglary (felony), in violation of California Penal Code § 459, for which he received 284 days in jail and 24 months' probation. PSR ¶ 29.[2] He violated probation for this conviction three times. *Id.*

On June 11, 2025, while out on federal pretrial release in this case, Novick was convicted for Assault With Force Likely to Produce Great Bodily Injury (felony), in violation of California Penal Code § 245(a)(4), for which he received a sentence of four (4) years of state prison. PSR ¶ 33.[3] Novick stabbed a victim on the right side of his upper chest and also swung the knife at the victim three to five other times. *Id.* Novick also attempted to attack the victim's friend with a knife. *Id.*

In sum, Novick's history and characteristics establish a troubling patten of criminal convictions, linked in part to substance abuse issues, but also connected, in certain instances, with violent acts directed at innocent bystanders and victims. His most recent arrest and conviction, while on federal pretrial release, is particularly concerning as it involved a violent assault with a knife that resulted in serious bodily injury to the victim.

---

[2] The arrest for this conviction was on June 23, 2021. *Id.*

[3] The arrest for this conviction was on October 31, 2024. *Id.*

### 2. Novick Possessed Several Federally Controlled Substances With the Intent to Distribute Them And He Distributed Them

The government will not repeat the relevant facts for the charged offense, which are set forth in this Sentencing Memorandum (*see supra* at p. 2-4) and the PSR. However, it emphasizes that the nature and circumstances of the charged offense are serious. Novick intentionally went to the Tenderloin District to purchase illegal drugs with the intent to distribute them to other individuals, and then he distributed them. At least two people overdosed after ingesting the drugs provided by Novick at the August 2022 hotel party. PSR ¶ 9. The next day, Novick was present for the overdose deaths of two individuals at his then-residence—a fact that further illustrates the dangerous and potentially deadly consequences of individuals using the drugs that Novick distributed.[4] Novick was certainly well aware of the lethality of the drugs that he was dealing, as he was present for the overdose death of his then-girlfriend in June 2021, *i.e.*, over a year prior to the charged offense in this case. *See* PSR ¶ 48. Yet, he continued to distribute drugs to other people. Accordingly, a mid-Guidelines sentence that will be imposed consecutively to a four-year state prison term is necessary to reflect the gravity of Novick's conduct.

### 3. The Court Should Consider the Victim Impact Statements Submitted by Probation

Contrary to defense counsel's objection, this Court should consider the victim impact statements submitted by Probation for sentencing. While these individuals do not fall under the statutory definition of a crime victim, as specifically defined in the Victims' Rights and Restitution Act ("VRRA"), 34 U.S.C. § 20141, and the Crime Victims' Rights Act ("CVRA"), 18 U.S.C. § 3771, they all provide relevant information regarding Novick's history and characteristics, and they are all persons who were significantly, even if indirectly, harmed by the criminal conduct in this case.

Federal law, the United States Sentencing Guidelines, and case law all make clear that, at sentencing, the district court may consider any information concerning the background, character, and conduct of the defendant at sentencing. The federal sentencing laws lay out a broad range of

---

[4] Two milligrams of fentanyl is a potentially lethal dose. U.S. Drug Enforcement Admin., Facts About Fentanyl, Feb. 23, 2022 (https://www.dea.gov/resources/facts-about-fentanyl). All weights referenced herein are gross weights.

information that the Court may consider.  As the Court knows well, 18 U.S.C. § 3553(a)(1) states that the court "shall consider . . . the history and characteristics" of the defendant in determining the particular sentence to be imposed.  That history and characteristics, in turn, under 18 U.S.C. § 3661 is broadly defined: "No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence."  Similarly, the United States Sentencing Guidelines provide that at sentencing, "the court may consider, without limitation, any information concerning the background, character and conduct of the defendant, unless otherwise prohibited by law."   U.S.S.G. § 1B1.4.  Likewise, U.S.S.G. § 6A1.3 states that at sentencing, "the court may consider relevant information without regard to its admissibility under the rules of evidence applicable at trial, provided that the information has sufficient indicia of reliability to support its probable accuracy."  Finally, case law supports this comprehensive consideration of information relevant to sentencing.  The Supreme Court has explained that a sentencing judge "may appropriately conduct an inquiry broad in scope, largely unlimited either as to the kind of information he may consider, or the source from which it may come." *Concepcion v. United States*, 597 U.S. 481, 491–92 (2022) (internal quotations and citation omitted).  The Ninth Circuit has held that district judges "may consider a wide variety of information at sentencing that could not otherwise be considered at trial." *United States v. Vanderwerfhorst*, 576 F.3d 929, 935 (9th Cir. 2009).

Moreover, in criminal cases, the government's obligations to victims are far-reaching and do not only apply to persons who qualify as statutory victims under the VRRA and CVRA.  The Attorney General Guidelines for Victim and Witness Assistance state that "Department personnel should make their best efforts to provide [] significantly harmed persons or entities, when known to the government, with assistance within available resources, to the extent reasonable, feasible, and appropriate."[5]  It specifically includes providing assistance to persons who were "significantly, even if indirectly, harmed" by the criminal conduct involved in the case.[6]  "In determining who may be in this category,

---

[5] Attorney General Guidelines for Victim and Witness Assistance, 2022 Edition, Article III.E, https://www.justice.gov/d9/pages/attachments/2022/10/21/new_ag_guidlines_for_vwa.pdf.

[6] *Id.*

Department personnel shall consider the full range of an offender's relevant criminal conduct, including any scheme, conspiracy, or pattern of criminal activity, as well as the full course of conduct related to the offense. *See generally* 18 U.S.C. § 3663A(a)(2); U.S.S.G. §§ 1B1.3(a)(1)-(3)."[7]

Here, all the individuals on whose behalf that the government submitted victim impact statements were significantly, even if indirectly, harmed by the criminal conduct in this case. These persons were relatives or friends of individuals who died in overdose incidents related, either directly or indirectly, to Novick possessing a federally controlled substance with the intent to distribute it and distributing it, including a pattern of activity related to his conduct. To be clear, the government did not charge Novick with any crimes implicating overdose deaths, nor is it seeking any sentencing enhancements related to that conduct. It also fully stands behind the agreed-upon Guidelines calculation and custodial sentence recommendation in the plea agreement. Dkt. 64. However, the sentencing process, including the contents of the PSR, is not solely confined to statutory victims and may include statements from non-statutory victims where appropriate.

In short, the Court has the authority to conduct an inquiry wide in scope at sentencing, including the consideration of victim impact statements from non-statutory victims under the VRRA and CVRA. That includes persons who were significantly, even if indirectly harmed, by the criminal conduct in this case. Accordingly, the Court should consider the submitted victim impact statements as part of its sentencing decision.

Out of respect for the privacy of the affected families, the government does not repeat herein the specific victim statements submitted. The overdoses connected with Novick's actions, directly or indirectly, have been devastating. The statements show that Novick's history of substance abuse, in which he shared illegal drugs with other individuals, has had terrible consequences, including for family members and friends who have lost their loved ones to drug overdoses. Their grief and pain is palpable. Although Novick may not be criminally responsible for these overdose deaths, the Court should nonetheless be aware of the concerning pattern associated with Novick's history and background for sentencing purposes.

---

[7] *Id.*

U.S.' SENTENCING MEMO                    9
CR 23-00017-JD

**4.    The Court Should Impose a Suspicionless Search Condition on Novick**

Here, the parties agreed to a suspicionless search condition for Novick in the plea agreement. Dkt. 64 ¶ 9.  Given the defendant's lengthy criminal history and the facts and circumstances related to the offense, a suspicionless search condition is particularly warranted.

It is "well-established" that "conditional releasees are not entitled to the full panoply of rights and protections possessed by the general public" and in fact "enjoy severely constricted expectations of privacy relative to the general citizenry." *United States v. Kincade*, 379 F.3d 813, 833–34 (9th Cir. 2004) (en banc) (citing Supreme Court cases); *see also United States v. Kriesel*, 508 F.3d 941, 950 (9th Cir. 2007) (noting that those on supervised release have "diminished privacy interests").  Indeed, "those who have suffered a lawful conviction" are properly subject to a "broad range of [restrictions] that might infringe constitutional rights in a free society." *McKune v. Lile*, 536 U.S. 24, 36 (2002).  For that reason, courts regularly uphold supervised release conditions that permit searches without a warrant and without reasonable suspicion. *See, e.g., Samson v. California*, 547 U.S. 843, 855–57 (2006) (analogizing state parole to federal supervised release and holding that "the Fourth Amendment does not prohibit a police officer from conducting a suspicionless search of a parolee"); *United States v. Cervantes*, 859 F.3d 1175, 1184 (9th Cir. 2017), as amended on denial of reh'g and reh'g en banc (Sept. 12, 2017) (approving "warrantless, suspicionless search condition[]" imposed on supervised release); *United States v. Betts*, 511 F.3d 872, 876 (9th Cir. 2007) (noting "[t]here is no sound reason for distinguishing parole from supervised release with respect to [suspicionless search conditions]").

Thus, district courts are well within their discretion to impose suspicionless search conditions. *See Betts*, 511 F.3d at 876 ("[a]fter *Samson*, there is no room for treating the search condition in this case as an abuse of discretion.").  "A district court enjoys 'significant discretion' in determining the conditions of supervised release for criminal defendants, including the authority to impose restrictions that infringe on fundamental rights." *United States v. Gibson*, No. 4:14-CR-00217-JD-1, 2016 WL 6873466, at *1 (N.D. Cal. Nov. 22, 2016) (citing *United States v. Weber*, 451 F.3d 552, 557 (9th Cir. 2006)).  Thus, the Court should impose such a condition.

* * * * * * *

For the reasons described herein, recognizing the seriousness of the offense, to promote respect

for the law, to provide just punishment for the offense, and to afford adequate deterrence, as well as considering the defendant's history and characteristics, the government respectfully submits that: (i) a custodial sentence of 27 months of imprisonment, to be served consecutively to the four-year state prison term imposed for Novick's June 11, 2025 conviction; (ii) three years of supervised release, to include a suspicionless search condition; and (iii) a special assessment of $100 is a sentence "sufficient, but not greater than necessary" under the law.  *See* 18 U.S.C. § 3553(a).

**V.     CONCLUSION**

For the foregoing reasons, the government respectfully recommends that the Court sentence the defendant Lucas Michael Novick to: (i) a term of imprisonment of 27 months, to be served consecutively to the four-year state prison term imposed by the Superior Court of California, County of Marin in the criminal case filed by the Marin County District Attorney's Office in DA Case No. 349969; (ii) three years of supervised release, to include a suspicionless search condition; and (iii) a special assessment of $100.

DATED:  July 29, 2025                              Respectfully submitted,

                                                  CRAIG H. MISSAKIAN
                                                  United States Attorney

                                                  */s/ Roland Chang*
                                                  ROLAND CHANG
                                                  Assistant United States Attorney